EXHIBIT 3

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| RUSTEM KAZAZI; LEJLA KAZAZI; and ERALD KAZAZI, | |
| *Movants,* | |
| v. | No. _____ |
| U.S. CUSTOMS AND BORDER PROTECTION; UNITED STATES OF AMERICA; KEVIN McALEENAN, Commissioner, U.S. Customs and Border Protection, sued in his official capacity; TIMOTHY STARK, agent of U.S. Customs and Border Protection, sued in his individual capacity; and UNKNOWN AGENTS OF U.S. CUSTOMS AND BORDER PROTECTION, sued in their individual capacities | |
| *Respondents.* | |

## DECLARATION OF ERALD KAZAZI IN SUPPORT OF RULE 41(G) MOTION FOR RETURN OF PROPERTY

I, Erald Kazazi, declare under penalty of perjury that the following is true:

1.    I am a citizen of the United States, a resident of the State of Ohio, and over 18 years old. I am fully competent to make this declaration, which I make based on my personal knowledge.

2.    I am the son of Rustem and Lejla Kazazi and reside with them at 6948 Greenbriar Drive, Parma Heights, Ohio 44130.

3.    Along with my parents and sister, I immigrated to the United States from Albania in 2005 and became an American citizen in October 2010.

1

4.      Since moving to the United States, I have become fluent in English.  I am also fluent in my native language of Albanian.

5.      I am studying chemical engineering at the Cleveland State University and am currently employed in a chemical engineering co-op position with a local chemical manufacturing company.

6.      In Albanian culture, men traditionally live with their parents until they are married, and they contribute to the family's expenses.  To honor this tradition and save money on rent, I continue to live with my parents and contribute substantially to family expenses.

7.      After the seizure of my family's money, I communicated by phone and email with U.S. Customs and Border Protection employees regarding the case (Case No. 2018-4101-00007901).

8.      I communicated with CBP employees on behalf of my father because his ability to communicate in English is limited and he was away on his trip to Albania during this period.

9.      On December 6, 2017, Rustem received by mail a Notice of Seizure from CBP noting the seizure of $57,330 in U.S. Currency—$770 less than the $58,100 that my father says he was carrying with him on October 24, 2017.  I have reviewed Exhibit 5 attached to the Motion for Return of Property, and it is a true and correct copy of the Notice of Seizure.

10.      On December 7, 2017, at 9:23 AM, I emailed Ms. Dawn Wesley-Ventura, Paralegal Specialist at the CBP Cleveland Office of Field Operations, to request clarification about a discrepancy in the dates on the seizure notice by which claims must be filed and court action must be requested.

11.      In one paragraph of the seizure notice, it indicated that we had to request court action by December 8, 2017.  In another paragraph, it indicated that claims must be filed and

court action requested within 35 days after the date the notice of seizure was mailed, which would have been January 5, 2018.

12.     After sending that email, I spoke on the phone with Mr. Jeffrey Clagett, another employee at CBP. At approximately 10:00 AM on December 7, 2017, I forwarded him the email I sent to Ms. Wesley-Ventura. Mr. Clagett confirmed receipt of my email at 10:09 AM and indicated that he had forwarded my questions to Ms. Wesley-Ventura.

13.     At 10:29 AM on December 7, 2017, I sent another email to Mr. Clagett, asking whether we could email our claim forms in the event that I did receive an answer from Ms. Wesley-Ventura before December 8, as they would not arrive by mail in time.

14.     On December 7, 2017, at 1:16 PM, Mr. Clagett sent me an email indicating that Ms. Wesley Ventura would correct the claim forms on December 8, 2017.

15.     On December 8, 2017, at 5:09 PM, Ms. Wesley-Ventura emailed me an amended notice, which indicated that the updated deadline to file claims and request court action was Saturday, January 13, 2018.

16.     I have reviewed Exhibit 6 attached to the Motion for Return of Property, and it is a true and correct copy of the chain of email communications with Ms. Wesley-Ventura and Mr. Clagett referenced in paragraphs 10–15.

17.     I have reviewed Exhibit 7 attached to the Motion for Return of Property, and it is a true and correct copy of the December 1, 2017 Amended Notice of Seizure.

18.     On January 3, 2018, I sent by certified mail claims on behalf of me, my father, and mother, all of which requested that the case be referred to the United States Attorney's Office (USAO) for court action.  I have reviewed Exhibits 8, 9, and 10 attached to the Motion for Return of Property, and they are true and correct copies of the claim forms that I sent.  I also

3

submitted these claims by email to Ms. Wesley-Ventura on January 3, 2018, at 3:39 PM, because she was the person identified in the seizure notification as our contact at CBP.  Ms. Wesley-Ventura acknowledged receipt of the claims in an email on January 4, 2018, at 6:14 AM.  I have reviewed Exhibit 11 attached to the Motion for Return of Property, and it is a true and correct copy of my email with the attached claim forms and Ms. Wesley-Ventura's response.

19.     On January 10, 2018, I sent by certified mail additional claims on behalf of Rustem and Lejla Kazazi for the $770 that was underreported on the Notice of Seizure.  I have reviewed Exhibits 12 and 13 attached to the Motion for Return of Property, and they are true and correct copies of the additional claims.

20.     I also sent the additional claims by email to Ms. Wesley-Ventura on January 10, 2018, at 1:20 PM.  I have reviewed Exhibit 14 attached to the Motion for Return of Property, and it is a true and correct copy of the email with the additional claims attached.

21.     The claim I submitted was for $24,667, which is the amount that I contributed to the $58,100 seized from Rustem on October 24, 2017.

22.     My father and mother each submitted claims to the remaining $34,433 (a combination of the January 3, 2018 claims for $32,663 and the January 10, 2018 claims for the underreported $770).

23.     The January 3, 2018 claims were received by CBP on January 8, 2018.  I have reviewed Exhibit 15 attached to the Motion for Return of Property, and it is a true and correct copy of the certified mail receipt with tracking number.

24.     I do not know when precisely the January 10, 2018 claims were received by CBP. Although the claims were sent by certified mail, I did not think to write down the certified mail number.  The green return receipt either never came back or was lost somehow.  I cannot

4

remember ever seeing it.  When it seemed like the card might be important to this case, I tried to locate it but could not.  I contacted the Post Office to see if they could confirm receipt, but they couldn't help me because I did not have the tracking number.  What I am sure of is that the CBP address where I sent the claims is less than six miles from our house.  In my experience, mailing something that distance within Cleveland shouldn't take more than four days.  Therefore, I estimate that CBP received the second claims no later than Monday, January 15.  A mailing within Cleveland of this distance usually takes two days maximum.

25.    On January 17, 2018, at 7:26 AM, I received an email response from Ms. Wesley-Ventura confirming receipt of our January 10 claims and requests for court action. She indicated that the file would be sent for review per our request.  I have reviewed Exhibit 16 attached to the Motion for Return of Property, and it is a true and correct copy of that email.

26.    On March 21, 2018, at 7:03 PM, I received an email from Carolyn M. Sarnecki, asking me to call or email her to discuss the claims.  I have reviewed Exhibit 17 attached to the Motion for Return of Property, and it is a true and correct copy of that email.  The email identified Ms. Sarnecki as an attorney for U.S. Customs and Border Protection, working in the Office of Associate Chief Counsel in Chicago.

27.    On March 27, 2018, at 10:24 AM, I responded by email to Ms. Sarnecki, asking her specifically what she wanted to discuss about our claims.  I also wrote that I preferred all communications to be in writing.  I have reviewed Exhibit 18 attached to the Motion for Return of Property, and it is a true and correct copy of that email.

28.    On March 27, 2018, at 11:55 AM, I received a response from Ms. Sarnecki. It asked if my parents and I would consider having CBP handle the forfeiture matter administratively, otherwise it would be sent for court action.  Additionally, the email asked if we

5

have any proof of a legitimate source of income for the seized currency.  I have reviewed Exhibit 19 attached to the Motion for Return of Property, and it is a true and correct copy of that email.

29.     I did not respond to Ms. Sarnecki's March 27 email because we had no interest in letting CBP decide what to do with our money.  We wanted to go to court and prove our innocence.

30.     On March 30, 2018, at 12:15 PM, I received a voicemail from Ms. Sarnecki, identifying herself as an attorney for CBP.  On the voicemail, she said that CBP had to send the claims to the court "within the next week."  She asked me to respond by phone or email to discuss "whether you want that to go to court or if we could handle this administratively."  I have reviewed Exhibit 20 attached to the Motion for Return of Property, and it is a true and correct copy of that voicemail, which I personally recorded from my cell phone.

31.     I did not respond to Ms. Sarnecki's March 30 call for the same reason I did not respond to her March 27 email.

32.     On April 23, 2018, I sent an email to Ms. Sarnecki and Ms. Wesley-Ventura asking them to update me about the status of our money "now that the deadline has passed."  I added: "If CBP is going to continue to hold the money, please tell me why."  I have reviewed Exhibit 21 attached to the Motion for Return of Property, and it is a true and correct copy of that email.

33.     Ms. Wesley-Ventura responded on April 25.  She wrote "You have requested to file a Court Action for the above referenced case.  Your case is currently with the U.S. Attorney's Office.  This process can take an extended amount of time to review.  Once there is any information, I will contact you with an update.  Feel free to contact me with any questions."

I have reviewed Exhibit 22 attached to the Motion for Return of Property, and it is a true and correct copy of that email.

34.    The same day, I wrote back and asked Ms. Wesley-Ventura: "Can you tell me who to contact at the U.S. Attorney's Office?" I have reviewed Exhibit 23 attached to the Motion for Return of Property, and it is a true and correct copy of that email.

35.    Within a few minutes, Ms. Wesley-Ventura responded: "We do not have a contact for the U.S. Attorney's Office. We will not know who is reviewing the Court Action until a decision has been made. Feel free to contact me with any questions." I have reviewed Exhibit 24 attached to the Motion for Return of Property, and it is a true and correct copy of that email.

36.    The $24,667 that I gave to my father to take to Albania was money that I earned and saved by working various jobs throughout high school and college.

37.    My intent was for my father to use that money, along with the money he and my mother had saved up, to make repairs to the home they own in Tirana, Albania, and for other family purposes.

38.    Between 2010 and 2016, I earned approximately $108,000 working for various employers. I have worked in restaurants as a busser and cleaner, as a lifeguard and manager for a swimming pool management company, and as a custodian for a veterinary clinic. As a chemical engineering student, I have worked in three different chemical engineering co-op positions with the same chemical manufacturing company. Co-op positions are similar to short-term paid internships.

39.    I filed individual federal, state, and city taxes every year I was required to do so. I have retained copies of all my wage and tax statements.

40. I have consistently maintained bank accounts where I keep my earnings and from which I frequently withdraw cash. The $24,667 that I contributed to the $58,100 seized from my father was drawn from my bank account.

41. If there is ever any question about how I acquired the money, I would be able to present all my W2 statements and all my federal, state, and city income tax returns. I also have access to all my bank account statements, which show every deposit and withdrawal I have made since opening the accounts. These records show that my savings were lawfully earned.

42. In my experience, my father is extremely careful with money. He is detail-oriented and almost obsessive about counting and recording his transactions. I have no doubt that he correctly counted the money that was seized from him.

43. Also, there is no question in my mind that my father is not connected to any sort of "smuggling/drug trafficking/money laundering operation." When my mother and I first saw the seizure notice, I was upset and angry that the government would make such ridiculous accusations about my father.

44. My father was a police officer for a very long time, and I have only known him to be honest, respectful, and even a little bit uptight. He has never done anything to deserve the treatment he received from TSA, DHS, and CBP.

45. Like my father, I have no connection whatsoever with any criminal activity. My parents raised me and my sister to be honest, hard-working, and frugal. I have worked from the age of 13, and all my money has come from legitimate sources.

46. I selected a challenging and time-consuming college major—chemical engineering—which requires me to be diligent and focused. To be successful in chemical

8

engineering, I cannot engage in any illegal activities. If I did, I would risk throwing away all of the hard work I have done to reach this point in my life.

47.      My entire family worked very hard for many years and gave up so much to be able to save the $58,100 that was seized from my father. I am disturbed and offended that anyone—especially the government—would suggest that my family might be involved in anything illegal.

48.      This horrible experience has completely disrupted our lives for almost 7 months. I was forced to withdraw from classes during my spring 2018 semester because of the time I needed to spend helping my father and mother with this situation and frankly because of the stress.

49.      For the last seven months, I should have been focused on school, work, and spending time with my family and friends. Instead, I have been in a constant state of worry and fear. Not only am I scared that my family will lose our hard-earned savings, but I am very worried about the health and well-being of my parents.

50.      My father had some pre-existing health conditions, including asthma and depression, and the stress of this ordeal has exacerbated his medical problems. My mother has had difficulty sleeping, especially while my father was away from us in Albania. No family should endure something like this when they have done absolutely nothing wrong.

51.      My father wrote down his testimony in this case in Albanian and then I translated his words into English. I was careful to translate every word exactly so that nothing was "lost in translation." I reviewed Rustem's declaration and compared it again to his Albanian version. The statements contained in the declaration all appeared to be true and correct translations from

Albanian into English.  My father and I also reviewed his declaration together and I translated the English words back into Albanian to make sure everything was accurate.

I declare under penalty of perjury that all the foregoing is true and correct. Executed this 30th day of May 2018.

*/s/ Erald Kazazi*

Erald Kazazi