IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **RUSTEM KAZAZI, et al.,** | ) | **CASE NO. 1:18 MC 51** |
| | ) | |
| Petitioners, | ) | **JUDGE DAN A. POLSTER** |
| | ) | |
| v. | ) | |
| | ) | |
| **U.S. CUSTOMS AND BORDER** | ) | **BRIEF IN OPPOSITION TO** |
| **PROTECTION, et al.** | ) | **PETITIONERS' CRIM. R. 41(g)** |
| | ) | **MOTION FOR RETURN OF** |
| Respondents. | ) | **PROPERTY** |

Now comes the Respondents, by and through Justin E. Herdman, U.S. Attorney for the Northern District of Ohio, and Assistant U.S. Attorneys Renée A. Bacchus and Lisa Hammond Johnson, and hereby file their Brief in Opposition to Petitioners' Motion for Return of Property. (ECF # 1)

I.  FACTS

On October 24, 2018, at the Cleveland Hopkins International Airport Checkpoint C, TSA screeners determined there was a bulk mass in the carry-on luggage of Rustem Kazazi ("Kazazi"), a ticketed passenger on a flight to Newark as the first leg of air travel that connected with Frankfurt, Germany, and terminated in Tirana, Albania.  TSA searched the luggage and found three bundles of cash wrapped in plastic wrap, wax paper and tape, contained inside a cloth bag.  Kazazi told TSA that the bundles totaled approximately $5,000.  TSA contacted the Cleveland police who responded to the checkpoint and interviewed Kazazi.  Kazazi told the CPD officer that the bundles contained approximately $30,000.  Cleveland Police Department

contacted the Department of Homeland Security, Immigration and Customs Enforcement, and two Homeland Security Investigation (HSI) agents, SA Starks and SSA Solloum responded to the Checkpoint C. (Salloum Decl. ¶ 5[1].)

The HSI agents asked Kazazi to accompany them to the private TSA screening area at Checkpoint C to interview him. (Salloum Decl. ¶ 6.) Kazazi agreed to a search of his person and luggage. (Id. ¶ 7.) Kazazi was wearing three jackets and two pairs of pants. (Id.) Kazazi was asked if would agree to remove the outer layer of clothing, which he agreed. (Salloum Decl. ¶ 7.) At no time did the agents "strip search" Kazazi or require him to undress down to his undergarments. (Id.) SA Stark located a bank envelope in Kazazi's outer jacket pocket that contained an undetermined amount of U.S. currency, unknown foreign currency, and a bank withdrawal receipt for $1,600. The contents of the bank envelope were returned to Kazazi at that time, and the agents and Kazazi exited the private screening room and returned to the back-screening area of Checkpoint C, which is in full view of the public. (Id. ¶ 8)

Upon returning to the screening area, the agents searched Kazazi's carry-on bag and discovered a bag containing what was thought to be gold jewelry and a brown cloth bag. The brown bag contained three bundles of U.S. currency wrapped in plastic wrap, wax paper, and tape. (Id. ¶ 9.) The agents do not recall there being any markings on the outside of the bundles. (Id.) Kazazi was questioned about the source of the currency. Kazazi stated that he was not currently working, the money represented accumulated savings, and the money totaled $50,000. He further stated that he was intending to move to Albania. (Id. ¶ 10, Record of Investigation, Kazazi-0003)

---

[1] Declaration of Mark Salloum, Supervisory Special Agent (SSA), and Exhibits in support (Bates number: Kazazi-0001 to Kazazi-0019) are attached to the Respondents' Brief.

In the presence of Kazazi SA Stark unwrapped each bundle of currency separately, placed the individual bundles on the table in the screen area, and photographed the bundles. (Id. ¶ 11.) Likewise, Kazazi was present when the three bundles of currency were placed in a plastic transparent evidence bag and the bag was sealed. (Id. ¶ 12; Kazazi-0015.) The currency was in mixed denominations as there was a five dollar bill displayed on one bundle and $100 dollar bills displayed on the other two bundles. (Id. ¶¶ 11, 12; Kazazi-0016.) The plastic wrap and wax paper that were found around the currency was also placed into a separate sealed evidence bag and photographed. (Id. ¶ 12; Kazazi-0018.)

It was explained to Kazazi that the currency was being seized pursuant to federal law, and that he would receive a notice in the mail explaining the seizure process. (Id. ¶ 13.) Kazazi was given a receipt indicating the seizure of currency with an unspecified dollar amount. (Salloum Decl. ¶ 11, 13.) Per policy, large sums of money are not counted on the scene but are placed in sealed evidence bags and subsequently transported to a banking facility where the money is counted by bank personnel. (Id. ¶ 11.) On October 24, 2017, the sealed evidence bag containing the currency was placed into a safe at the HSI Cleveland airport office where it was secured and stored overnight. (Id. ¶ 14.) The next day, October 25, 2017, SA Stark and SSA Salloum transported the sealed evidence bag containing the currency to a contracted banking facility. (Id.) The sealed evidence bag was handed to Tracy Erks, an employee of the contracted banking facility who signed the chain of custody form and took possession of the sealed evidence bag containing the currency. (Id. ¶ 15.Kazazi-0005-0006) Erks opened the evidence bag from the bottom and handed the currency to Janet Jolly, another employee of the contracted banking facility who counted the funds and determined the total amount to be $57,330.00. (Id.) SSA Salloum, SA Stark, Ms. Erks, and Ms. Jolly were all present during the counting of the currency.

(Id.)  A breakdown of the mixed denominations is 573 one hundred dollar bills; 2 ten dollar bills; and 2 five dollar bills, as indicated on the bank deposit slip. (Id.; Kazazi-0018.)

HSI informed Kazazi the large sum of money in his carry-on was being seized pursuant to 18 U.S.C. § 1960, Unlicensed Money Remitter and 18 U.S.C. § 1956, Money Laundering. (SSA Salloum Decl. ¶ 13.)  The agents further explained to Kazazi that he would receive a letter in the mail explaining the seizure process.  (Id. ¶ 13.)

On December 1, 2017, the Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP") issued a "Notice of Seizure and Information to Claimants" regarding the seized currency.  (Petitioners' Motion ECF No. 1 Ex. 4 PageID # 52-57.)  The notice informed Kazazi of the amount of currency seized and outlined the procedure for filing a claim.  (Id.)  Initially, on January 3, 2018, Kazazi and his wife, Lejla Kazazi, filed a claim stating that they were the owner of $32,663.00 of the seized currency, and their son, Erald Kazazi filed a claim stating he was the owner of the remaining $24,667.00 of the $57,330.00.  The claimants requested that CBP refer the case to the United States Attorney's Office for court action. (Id. Ex. 8 PageID # 71-73; Ex. 9 PageID # 78-80; Ex. 10 PageID # 86-87.)  Subsequently, on or about January 10, 2018, Kazazi and his wife, signed declarations addressed to CBP acknowledging that they submitted a claim for $32, 663.00, but now claimed that an additional $770 of currency was seized from them.  (Id. Ex. 12 PageID # 106-107 & Ex. 13 PageID # 110-111.)

On May 31, 2018, the Movants filed the within Crim. R. 41(g) Motion in District Court seeking the return of $58,100.  (Id. PageID # 15.)  On or about June 5, 2018, Respondents' counsels contacted Movants' counsel and explained that HSI seized $57, 330.00 and CBP had started the process for refunding currency seized in the original amounts claimed.

II.    LAW AND ARGUMENT

A motion for return of property pursuant to Fed. R. Crim. P. 41(g) is "essentially a civil equitable proceeding." Savoy v. United States, 604 F.3d 929, 932 (6th Cir. 2010) (quoting United States v. Duncan, 918 F.2d 647, 654 (6th Cir. 1990)). "A Rule 41(g) motion is an equitable remedy that is available only when there is no adequate remedy at law and the equities favor the exercise of jurisdiction." Jerdine v. Fed. Bureau of Investigation, No. 4:11CV00391, 2013 WL 5209894 (N.D. Ohio Sept. 13, 2013) (citing De Almeida v. United States, 459 F.3d 377, 382 (2d. Cir. 2006)).

Federal Criminal Rule 41(g) states:

> **(g) Motion to Return Property.** A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

The only relief available is an order for the return of the property still in the possession of the government. See United States v. Rojas, No. 3:08-CR-48-TAV-CCS-9, 2015 WL 5020667, at *7-8 (ED Tenn. Aug. 21, 2015)(citations omitted); McBean v. United States, 147 F. Supp.2d 820, 825 (ND Ohio 2001).

The remedy available under Rule 41(g) is limited. Peloro v. United States, 488 F.3d 163, 177 (3d Cir. 2007). The court may only order the return of the defendant's property that is still in the government's possession. Id. (Rule 41(g) "provides for one specific remedy—the return of property"); United States v. Bein, 214 F.3d 408, 415 (3d Cir. 2000) (same); United States v. Stevens, 500 F.3d 625, 628 (7th Cir. 2007) (Rule 41(g) motion for the return of property that was never forfeited must be denied if the government is no longer in possession of the property).

5

"'Rule 41(g), which simply provides for the return of property, does not waive the sovereign immunity of the United States with respect to actions for money damages relating to such property.'" Bertin v. United States, 478 F.3d 489, 492 (2d Cir. 2007) (quoting Adeleke v. United States, 355 F.3d 144, 151 (2d Cir. 2004)); see also, United States v. Urbina, Case No. 1:06-CR-311, 2010 WL 955290 (W.D. Mich. Mar. 15, 2010); Lucas v. United States, Case No. 4:06CV1973, 2007 WL 710209, at * 4-5 (N.D. Ohio Feb. 6, 2007) (Gwin, J.); McBean v. United States, 147 F. Supp.2d 820, 825-26 (N.D. Ohio 2001) (Dowd, J.).

Moreover, an equitable claim for the return of missing personal property must be dismissed because the Federal Defendants are not in possession of the property. As noted in Bertin, "Under Rule 41(g), the court can order the return of property that is in the hands of the government." 478 F.3d at 492. In Urbina, some of the property defendant requested be returned was in the possession of the local police department and had been destroyed. Urbina, 2010 WL 955290, at *1. The court held that since the property had been destroyed, it could not grant the equitable relief of ordering the property returned. Id.

Here, the Federal Respondents were never in possession of an additional $770 that Movants allege was seized. (Salloum Decl. ¶ 15.) Movants have the burden of proof to establish that Respondents seized $58,100, all in one hundred dollar bills as alleged. Savoy, 604 F.3d at 932. Kazazi stated in his declaration that the bundles of cash in his carry-on luggage that was seized by the HSI agents contained all one hundred dollar bills. (Compl. ECF No. 1 Kazazi Decl. PageID # 23.) As depicted in the photographs of the money taken in the presence of Kazazi the currency was not all one hundred dollar bills. (Salloum Decl. ¶ 11; Kazazi-0015-0016.) According to the count furnished by the bank, the agents seized a total of $57,330, which

is the exact amount that was returned to the movants. (Id.) Thus, it would be a vain act for the Court to order the Federal Defendants to return property not in their possession.

III.     CONCLUSION

For the reasons set forth herein, Federal Defendants respectfully moves this Court to deny Movants' Crim. R. 41(g) Motion for Return of Property seeking the return of $58,100.

JUSTIN E. HERDMAN
United States Attorney
Northern District of Ohio

By:     s/ Renée A. Bacchus
Renée A. Bacchus (#0063676)
Assistant United States Attorney
801 W. Superior Avenue, Suite 400
Cleveland, OH  44113
216-622-3707 – Bacchus
216-522-4982 – fax
Renee.Bacchus@usdoj.gov

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)

Pursuant to 28 U.S.C. § 1746, undersigned counsel certifies that the foregoing Brief in Opposition to Petitioners' Crim. R. 41(g) Motion for Return of Property is seven (7) pages in length and within the page limitations of an unassigned matter.

s/Renée A. Bacchus<br>
Renée A. Bacchus<br>
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of July, 2018, a copy of the foregoing Brief in Opposition to Petitioners' Crim. R. 41(g) Motion for Return of Property was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Renée A. Bacchus<br>
Renée A. Bacchus<br>
Assistant U.S. Attorney