UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RUSTEM KAZAZI; LEJLA KAZAZI; and ERALD KAZAZI,<br><br>*Movants*,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; UNITED STATES OF AMERICA; KEVIN McALEENAN, Commissioner, U.S. Customs and Border Protection, sued in his official capacity; TIMOTHY STARK, agent of U.S. Customs and Border Protection, sued in his individual capacity; and UNKNOWN AGENTS OF U.S. CUSTOMS AND BORDER PROTECTION, sued in their individual capacities,<br><br>*Respondents*. | No. 1:18-MC-00051-DAP<br><br>JUDGE DAN AARON POLSTER |

**REPLY IN SUPPORT OF PETITIONERS'**
**MOTION FOR RETURN OF PROPERTY**

Rustem, Lejla, and Erald Kazazi filed this action on May 31, 2018, seeking the return of $58,100 allegedly seized from Rustem Kazazi by Respondents. On July 31 (61 days later), Respondents filed a brief in opposition, conceding the Kazazis' entitlement to the return of $57,330[1] but disputing the existence of $770, which Respondents contend was never seized in the first place.

---

[1] On July 9, 2018, the Court held a settlement conference at which it directed Respondents to tender the Kazazis a check for the undisputed amount of $57,330 plus interest. (ECF 8.) The Kazazis have received that check, and the $57,330 is no longer in dispute in this case.

1

The Court is well aware of the factual dispute at the heart of this case—which is, basically, how much money was seized and what happened to it—and has already set this matter for trial. But Respondents have misstated the burdens that will apply at that trial in two relevant respects. First, they incorrectly assert that the Kazazis (rather than the government) bear the burden of proof in demonstrating how much money the government seized in the first place. Second, they overlook the fact that Respondents have destroyed evidence relevant to this case, entitling the Kazazis to factual inferences in their favor. Taking both of these things into account, the disputed facts here should be resolved in the Kazazis' favor after trial.

### I. Respondents misstate the Kazazis' burden of proof.

Respondents assert that the Kazazis "have the burden of proof to establish that Respondents seized $58,100" instead of seizing only $57,330. (ECF 10 (Br. in Opp'n) at 6.) This is incorrect: The Kazazis only burden was to "make[ ] out a prima facie case of lawful entitlement" to the seized money; at that point, "the burden shifts to the government to show that 'it has a legitimate reason to retain the property.'" *H&H Wholesale, Inc. v. United States*, No. 05-70788, 2005 U.S. Dist. LEXIS 21269, 2005 WL 2072103 (E.D. Mich. Aug. 26, 2005) (quoting *United States v. Chambers*, 192 F.3d 374, 377 (3d Cir. 1999)).

Respondents suggest that this means the Kazazis carry the burden of proof on the question of how much money was seized, relying entirely on *Savoy v. United States*, 604 F.3d 929, 932 (6th Cir. 2010). (Br. in Opp'n at 6.) But neither *Savoy* nor any of the cases it relies upon actually addressed that question; these cases say only that a "person seeking return of property must show that they are lawfully entitled to possess it." *Savoy*, 604 F.3d at 932–33 (quotation

marks and citations omitted). The question in *Savoy*, for example, was whether the claimant was legally entitled to the videos he had made of nude women without their knowledge.[2] *Id.* at 933.

The dispute here, by contrast, is not whether the Kazazis' money was lawfully obtained but rather how much of it was seized in the first place. Courts confronting that question have placed the burden of proof on the government. In *United States v. Approximately $16,500 in United States Currency*, for example, the movants alleged that the DEA had seized $20,000 from a safe-deposit box while the DEA contended that it took only $16,500. 113 F. Supp. 3d 776, 779 (M.D. Pa. 2015). The court determined that, just as the government would have a burden of production to prove that it no longer possessed the property being sought, the government had the same burden to show it had never seized the property in the first place. *Id.* at 782.[3]

The same rule should apply here. The Kazazis have laid out a detailed prima facie case explaining that Rustem Kazazi was carrying $58,000 in his bag when he was detained by Respondents and their agents. Just as in *$16,500*, to the extent there is a dispute about how much was actually seized, the party doing the seizing must bear the burden of proof: After all, ordinary citizens going about their business do not expect government agents to descend upon them and seize their property—and they therefore do not engage in the kind of meticulous documentation that would allow them to carry a burden of proof after that property is gone. Government agents,

---

[2] He was not. *Id.*

[3] In *$16,500*, the government met its burden because it provided substantial documentary evidence demonstrating that it had seized only $16,500 and the movants provided nothing beyond "conclusory declarations" regarding their claims. *Id.* at 783. Here, as demonstrated in the original Motion for Return of Property, the Kazazis have provided substantial evidence corroborating their claims—and, as discussed in Part II below, they would be able to provide even more such evidence had Respondents not destroyed it.

by contrast, have continuous access to the property they have seized and can be expected to bear the burden of proving exactly what was taken.[4]

## II. The evidence already adduced establishes that Respondents have spoliated relevant evidence.

One of the key factual disputes in this case is whether the cash seized from Rustem Kazazi was wrapped in bundles labeled with total currency amounts. The Kazazis have presented evidence that the currency was wrapped in clearly labeled paper and that these packages were themselves contained in an envelope labeled "$58,100." (*See, e.g.*, ECF 1-2 (Decl. of Rustem Kazazi) at ¶¶ 13–14.) Respondents have introduced testimony suggesting that the paper wrapping had no such label on it—or, at least, that Special Agent Mark Salloum does not remember any labeling. (ECF 10-1 (Decl. of Mark Salloum) at ¶ 9.) The resolution to this dispute would be telling. After all, Rustem Kazazi had no motive to *mislabel* the currency he was carrying, so the labels would be powerful evidence that he was right about the total amount at issue—but if Kazazi is incorrect about whether the bundles were labeled, then perhaps he is incorrect about the total amount he was carrying as well.

This dispute could easily be resolved by looking at the paper wrappings themselves. The Court cannot do so here, though, because Respondents have lost them. Despite clearly recognizing that the wrappings had evidentiary value—and despite transporting them to the HSI

---

[4] As the Sixth Circuit has observed in a different context, a taxpayer who faces a tax assessment based on the disallowance of deductions can reasonably be made to bear the burden of proof because "the taxpayer has better access to evidence of the underlying transactions." *United States v. Walton*, 909 F.2d 915, 918 (6th Cir. 1990). Where a dispute hinges on a taxpayer's contention that he never received income attributed to him, however, the burden shifts to the government because the taxpayer does not have special access to the relevant records. *Id.* A similar analysis would apply here: Where a dispute hinges on whether a movant has a lawful right to certain property, the movant rightly bears the burden to show that he has some legal right to the property. But where the dispute is over what property was taken, the movant cannot be forced to bear that burden precisely because his access to the thing that would best make that showing (the property itself) has been taken away.

Forensics Lab precisely because of that evidentiary value—Respondents have lost them with no explanation of where they went. (ECF 10-1 at ¶ 17.)

This destruction of relevant evidence warrants sanction. In the Sixth Circuit, the standard for determining whether a spoliation sanction is appropriate requires a showing:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Beaven v. United States Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (quotation marks and citation omitted).[5] In other words, "an adverse inference for evidence spoliation is appropriate if the Defendants 'knew the evidence was relevant to some issue at trial and . . . [their culpable] conduct resulted in its loss or destruction.'" *Id.* Here, the Respondents, by their own admission, knew the paper wrappings were potentially relevant evidence and treated them as potentially relevant evidence. And they lost them.

Losing admittedly relevant evidence is, at a minimum, negligent. *Cf. id.* at 554 (noting that courts must conduct a factual inquiry into a party's "degree of fault" in destroying evidence before determining sanction). And, at a minimum, that should entitle the Kazazis to an inference that Rustem Kazazi's testimony about what was written on the wrappings is correct, and Agent Salloum's testimony incorrect. *See id.*

---

[5] When no criminal matter is pending against a claimant, "a motion under Federal Rule of Criminal Procedure 41(g) is a civil equitable action against the United States." *United States v. Haynes*, No. 07-cr-20639, 2015 U.S. Dist. LEXIS 156885 (E.D. Mich Nov. 20, 2015) (citing *United States v. Dusenbery*, 201 F.3d 763, 768 (6th Cir. 2000)). The Kazazis therefore use the standard for spoliation sanctions in civil actions.

**CONCLUSION**

Respondents' opposition to the Kazazis' motion for return of property unquestionably raises factual disputes to be resolved after the scheduled trial. But the burden of proof at that trial should rest with Respondents, and the Kazazis should at minimum be entitled to favorable factual inferences as a result of Respondents' spoliation of evidence.

Dated: August 13, 2018

Respectfully submitted,

| | |
|---|---|
| /s/ Patrick T. Lewis | /s/ Robert McNamara |
| Patrick T. Lewis (0078314) | Robert J. McNamara (VA bar no. 73208)* |
| BakerHostetler LLP | Institute for Justice |
| 127 Public Square, Ste 2000 | 901 N Glebe Rd, Ste 900 |
| Cleveland, OH 44114-1214 | Arlington, VA 22203-1853 |
| P: (216) 621-0200 | P: (703) 682-9320 |
| F: (216) 696-0740 | F: (703) 682-9321 |
| Email: plewis@bakerlaw.com | Email: rmcnamara@ij.org |
| | |
| Wesley Hottot (TX bar no. 24036851)* | Johanna Talcott (CA bar no. 311491)* |
| Institute for Justice | Institute for Justice |
| 600 University Street, Ste 1730 | 2 South Biscayne Boulevard, Ste 3180 |
| Seattle, WA 98101-3150 | Miami, FL 33131-1803 |
| P: (206) 957-1300 | P: (305) 721-1600 |
| F: (206) 967-1301 | F: (305) 721-1601 |
| Email: whottot@ij.org | Email: jtalcott@ij.org |

*Counsel for Movants*

* Admitted *pro hac vice*.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(f), undersigned counsel certifies that the foregoing brief is 6 pages in length and within the page limitations set for an unassigned matter.

/s/ Robert McNamara

Robert McNamara
Attorney for Movants

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of August, 2018, a copy of the foregoing brief was filed electronically and that notice of this filing was therefore sent to all parties by operation of the Court's electronic filing system.

/s/ Robert McNamara

Robert McNamara
Attorney for Movants