**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| RUSTEM KAZAZI; LEJLA KAZAZI; and ERALD KAZAZI, <br><br> *Movants*, <br><br> v. <br><br> U.S. CUSTOMS AND BORDER PROTECTION; UNITED STATES OF AMERICA; KEVIN McALEENAN, Commissioner, U.S. Customs and Border Protection, sued in his official capacity; TIMOTHY STARK, agent of U.S. Customs and Border Protection, sued in his individual capacity; UNKNOWN AGENTS OF U.S. CUSTOMS AND BORDER PROTECTION, sued in their individual capacities, and RONALD D. VITIELLO, Acting Director of Immigration and Customs Enforcement, sued in his official capacity, <br><br> *Respondents*. | No. 1:18-MC-00051-DAP <br><br> JUDGE DAN AARON POLSTER |

**MOTION FOR ATTORNEY FEES AND COSTS**

Movants Rustem, Lejla, and Erald Kazazi respectfully submit this Motion for Attorney Fees and Costs and ask that the Court award the Kazazis attorney fees and costs in the amount of $43,280.13 in the above-captioned matter. As explained more fully in the below memorandum of points and authorities, the Kazazis are entitled to attorney fees and costs because they have "substantially prevail[ed]" in this action within the meaning of 28 U.S.C. § 2465(b)(1).

**Memorandum of Points and Authorities**

On October 24, 2017, agents of Respondent Customs and Border Protection (CBP) seized at least $57,330 in cash belonging to Movants Rustem, Lejla, and Erald Kazazi.[1] Respondents initiated civil forfeiture proceedings against this money, sending the Kazazis a "Notice of Seizure and Information to Claimants—CAFRA Form."[2] The Kazazis objected to the administrative forfeiture of their property and asserted their right under CAFRA to a judicial forfeiture. Respondents failed to initiate that judicial forfeiture within the time limit established by CAFRA—but, despite the lapse of their deadline, they also failed to promptly return the seized property as was required by CAFRA. Instead, the Kazazis were forced to file this civil action to secure the return of their property and the end of Respondents' efforts at forfeiture. Because filing this case and securing the return of their property required a substantial expenditure of attorney time, the Kazazis now seek an award of attorney fees under CAFRA. Below, the Kazazis establish both that they are entitled to a fee award and that the particular award they seek is reasonable.

I.      **The Kazazis Are Entitled To An Award Of Reasonable Attorney Fees.**

A property owner is entitled to "reasonable attorney fees and other litigation costs reasonably incurred" if he "substantially prevails" in "any civil proceeding to forfeit property under any provision of Federal law." 28 U.S.C. § 2465(b)(1). The Kazazis are entitled to

---

[1] The Kazazis contend that the government seized $58,100; Respondents contend that they took only $57,330. ECF 1. This motion for fees concerns only the undisputed $57,330 that has been returned to the Kazazis pursuant to the Court's order. The disputed $770 is the subject of a separate settlement agreement between the parties, and the Kazazis do not seek fees related to their pursuit of the disputed amount. *Cf.* ECF 15 (order dismissing remaining claims with prejudice).

[2] "CAFRA" is a reference to the Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 114 Stat. 202, which (among various other reforms to federal asset forfeiture) created the fee-shifting provision at issue in this motion.

reasonable attorney fees here because they have substantially prevailed and because the Motion

for Return of Property they filed is properly understood as part of a civil proceeding to forfeit

property.

### A.  The Kazazis have substantially prevailed.

The Kazazis have substantially prevailed in this action: When the Kazazis initiated this

action, the federal government was holding at least $57,330 of their money for the purpose of

pursuing civil forfeiture and the Kazazis had various potential legal causes of action against the

government and its agents relating to the seizure and retention of that money. Today, the

government has complied with this Court's order to return that money with interest, and any

further legal claims regarding the money have been resolved with prejudice. *See* ECF 15. That is

what it means to "substantially prevail."

There can be no serious question that the Kazazis have prevailed in the colloquial sense:

They have achieved what they wanted to achieve by filing this action. Respondents' only

possible rejoinder would be to suggest that the Kazazis have not prevailed *legally*: that

Respondents always intended to give their money back and that the Kazazis are therefore

ineligible for a fee award because they were a mere "catalyst" and so not a true prevailing party

under *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and*

*Human Resources*, 532 U.S. 598 (2001).

This argument is incorrect for two reasons. First, the Kazazis (unlike the plaintiffs in

*Buckhannon*) have achieved a material alteration in their legal relationship with the Respondents.

Second, the *Buckhannon* doctrine, which deals with the meaning of "prevailing party" cannot be

coherently extended to CAFRA's fee-shifting provision, which awards fees to "substantially

prevail[ing]" parties and is structurally different from the sort of fee-shifting statutes to which *Buckhannon* generally applies.

### 1. The Kazazis have materially altered their legal relationship with Respondents.

As an initial (and dispositive) matter, even if *Buckhannon* applies here, the Kazazis are still a prevailing party entitled to fees because there has been a "material alteration of the legal relationship" between them and Respondents. *Buckhannon*, 532 U.S. at 603–05. The Kazazis filed this action in May 2018, at which point the government had held the Kazazis' money for over seven months (and was, by any measure, more than a month past its deadline to move forward with its forfeiture proceedings). ECF 1. In a telephone status conference held on June 8, 2018, this Court "directed Respondents to send the Kazazi's a check for the undisputed amount of $57,330 plus interest[.]" ECF 8. In July of 2018, the government finally complied with this instruction and returned the Kazazis' money with interest. And, now, all the Kazazis' claims regarding the money have been resolved and dismissed with prejudice. ECF 15. This action— along with all the disputes underlying it—has therefore been completely and permanently resolved.

All of that reflects a material alteration of the legal relationship between the parties. Where courts have found that civil-forfeiture claimants are ineligible for fees under *Buckhannon*, they have done so because the government's cessation of its forfeiture action was both voluntary and without prejudice. *See United States v. $32,820.56*, 838 F.3d 930, 935 n.3 (8th Cir. 2016) (collecting cases).  Here, the government's actions were neither voluntary nor without prejudice. Quite the contrary: Even if Respondents had at some point subjectively intended to give the Kazazis' money back, they did not do so until they were ordered to do so by this Court. ECF 8. An order from a federal judge instructing one party to give property to another party is perhaps

4

the quintessential example of a "material alteration" under *Buckhannon*. *See, e.g.*, *Sierra Club v. Hamilton Cty. Bd. of Cty. Comm'rs*, 504 F.3d 634, 643 (6th Cir. 2007) ("Under *Buckhannon*, a plaintiff must obtain court-ordered or court-sanctioned relief in order to be considered a prevailing party."). And there was no intervening legal process that rendered the return of the Kazazis' property inevitable regardless of this Court's actions. *Cf. Petteway v. Henry*, 738 F.3d 132 (5th Cir. 2013) (finding that plaintiffs who obtained injunctive relief against a redistricting plan were not prevailing parties because the defendant's actual behavior was governed not by the injunction but by the Department of Justice's independent preclearance review). However Respondents may characterize their *intention* to return the Kazazis' money, they did not in fact return it until long after they were ordered to do so. The Kazazis were entitled to the return of their property by April of this year at the latest—a full month before they filed this lawsuit, nearly two months before this Court ordered the property's return, and roughly three months before the Kazazis actually got their money back. Similarly, this case was not dismissed without prejudice: To the contrary, all the claims in this case have been dismissed *with* prejudice. ECF 15.

Simply put, at the beginning of this case, the government had the Kazazis' money and the Kazazis had legal claims saying they were entitled to get their money back. At the end of this case, the Kazazis have their money back and any further legal disputes about that money between these parties would be barred by res judicata (as well as by CAFRA itself). That is a material alteration of the parties' legal relationship, and undeniably one in which the Kazazis have substantially prevailed.

### 2. *Buckhannon* cannot be coherently applied to CAFRA.

Even if the Kazazis had not prevailed within the meaning of *Buckhannon* (which they have), allowing the government to escape CAFRA fees under *Buckhannon* would conflict both with the structure and the plain language of CAFRA, which differ in significant ways from other federal fee-shifting provisions.[3]

*First*, CAFRA is structurally different from other federal fee-shifting statutes like 42 U.S.C. § 1988 because it *already contains* detailed provisions laying out when the government can avoid paying fees—and those provisions simply cannot be squared with an interpretation of the statute that allows the government to avoid fee-shifting any time its return of property is "voluntary." For example, if there are multiple claims to the same property, the United States can avoid fees by voluntarily returning a claimant's interest in the property—*but only provided that* it "(i) promptly recognizes such claim; (ii) promptly returns the interest of the claimant in the property to the claimant [if reasonably possible]; (iii) does not cause the claimant to incur additional, reasonable costs or fees; and (iv) prevails in obtaining forfeiture with respect to one or more of the other claims." 28 U.S.C. § 2465(b)(2)(C). But if *Buckhannon* applies to CAFRA's fee-shifting provision, the requirements of § 2465(b)(2)(C) would never come into play: Under *Buckhannon*, if the government voluntarily returns a claimant's property without a court order— even if it does not do so promptly or even if it also causes the claimant to incur additional expenses—the government may still escape paying fees because the claimant has not created a "material alteration" in their legal relationship. But § 2465(b)(2)(C) expressly imposes *additional*

---

[3] The Kazazis acknowledge, of course, that courts outside this Circuit have held that *Buckhannon*'s rule applies in the context of CAFRA. *See, e.g.*, *32,820.56*, 838 F.3d at 935 & n.3 (collecting cases). While district courts within the Sixth Circuit have applied *Buckhannon* in the context of CAFRA, *see, e.g.*, *United States v. 2007 BMW 335i Convertible*, 648 F. Supp. 2d 944 (N.D. Ohio 2009), the Sixth Circuit itself has never held that *Buckhannon* applies here, and the Kazazis accordingly contend that it should not for the reasons stated *infra*.

*requirements* on the government in order to avoid fees *even where* it voluntarily returns property and *even where* there is no material alteration in the parties' legal relationship.

These requirements § 2465(b)(2)(C) demonstrate that the mere fact that government officials voluntarily return seized property is not, on its own, enough to escape CAFRA's fee-shifting requirements. Any other reading of the statute would render the whole subsection a nullity. *Cf. Bio-Medical Applications of Tenn., Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 286 (6th Cir. 2011) (noting courts' duty to avoid construing laws in ways that render portions inoperative "if at all possible").

*Second*, this structural difference makes sense in light of the *language* of CAFRA as well. CAFRA, again unlike § 1988, authorizes the payment of fees not just to parties that *prevail* but to anyone who *substantially* prevails. 28 U.S.C. § 2465(b)(1). The word "substantially" means "consisting of or relating to substance."  The Merriam-Webster Collegiate Dictionary 1174 (10th ed. 1993). The phrase "substantially prevails" should be read more broadly than simply the word "prevails" because the word "substantially" is further defined to mean "largely but not wholly that which is specified." *Id*. In other words, as a matter of ordinary usage, "substantially prevailing" is a broader category (and an easier bar to meet) than "prevailing" and therefore *Buckhannon*'s "prevailing party" standard cannot control here. *But see $32,820.56*, 838 F.3d at 934–35 (reading "substantially prevails" as functionally identical to "prevailing party").

It makes sense for CAFRA to have a more capacious notion of when a party is entitled to fees because, unlike other fee-shifting statutes that are largely targeted at plaintiffs, claimants under CAFRA are more like defendants: Their only objective is to *stop* the government from forfeiting their property. And, as the Supreme Court recently emphasized, the analysis of whether a party is "prevailing" has to depend on which party is making a claim for fees. *CRST*

7

*Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1651 (2016). In *CRST*, the Supreme Court determined that *Buckhannon*'s "material alteration" standard cannot, as a matter of "[c]ommon sense[,]" be rigidly applied to defendants seeking fee-shifting under a "prevailing party" statute: "Plaintiffs and defendants come to court with different objectives" and while "a plaintiff seeks a material alteration in the legal relationship between the parties[,] [a] defendant seeks to prevent this alteration to the extent it is in the plaintiff's favor." *Id.* Here, the Kazazis are the functional equivalent of defendants—not plaintiffs—because they were seeking only to prevent the continued seizure or forfeiture of money that was rightfully theirs. The return of that property has given them everything they wanted out of this action, and it therefore makes perfect sense to say that they have prevailed—regardless of how voluntary the government's eventual acquiescence in their claims may have been.

### B.  This is a "civil proceeding to forfeit property" within the meaning of CAFRA.

The Kazazis are entitled to an award of attorney fees under § 2465 because CAFRA controls this civil action and has at every step of the way. After the initial seizure of the Kazazis' money, Respondents consistently treated that seizure as a forfeiture proceeding governed by CAFRA. After the filing of this case, the parties and the Court have consistently (and correctly) treated it as a forfeiture proceeding governed by CAFRA. That is because this is a forfeiture proceeding governed by CAFRA— and CAFRA's provisions regarding attorney fees and costs therefore control as well.

As an initial matter, from the moment Respondents seized the Kazazis' money, they have pursued civil forfeiture of that money. CBP sent the Kazazis a "Notice of Seizure and Information to Claimants—CAFRA Form," in which the agency laid out the provisions of CAFRA that the Kazazis had a right to invoke in response to the seizure. ECF 1-6. The Kazazis

8

invoked those rights by returning the "CAFRA Seized Asset Claim Form" and "Election of Proceedings – CAFRA Form" that the agency had enclosed with its seizure notice. ECF 1-9, 1-10, 1-11.  At no point did CBP or any other governmental agent suggest that the Kazazis' money was being held for any other purpose other than forfeiture in civil proceedings. Far from abandoning their forfeiture efforts, Respondents simply failed to move them along quickly enough to comply with the strict deadline established by CAFRA. *See* 18 U.S.C. § 983(a)(3)(B). But, having failed to seek civil forfeiture within CAFRA's deadline, Respondents also failed to comply with CAFRA's command that they return the Kazazis' property.  *See id.*

After the expiration of CAFRA's limitations period, *see id.*, the Kazazis asked CBP if it would return their money and, if not, why it was still being held, *see* ECF 1-23. But the Kazazis repeated requests were met with no meaningful response: agents of CBP said they had no control over the Kazazis' money, no idea what would happen to it, and no suggestions as to who the Kazazis should contact about getting it back. *See* ECF 1 at 7 (summarizing evidence). This left the Kazazis with no choice but to file this action for return of property under Federal Rule of Criminal Procedure 41(g)—an action that is "essentially a civil equitable proceeding, notwithstanding the fact that the motion was styled under Fed. R. Crim. P. [41(g)]."[4] *United States v. Duncan*, 918 F.2d 647, 654 (6th Cir. 1990). The government's inaction put the family in a position of needing to seek a judicial ruling that their money was no longer forfeitable and that Respondents were therefore required to return the money with interest. CAFRA's fee-shifting provision was designed to ensure that property owners whose property is not subject to forfeiture are not required to incur substantial expenses in the course of getting that property back—to

---

[4] "Previously, the subsection addressing motions to return property was Rule 41(e)," but, "[i]n 2002, this subsection was redesignated Rule 41(g) without substantive change." *Brown v. United States*, 692 F.3d 550, 552 (6th Cir. 2012) (quoting *De Almeida v. United States*, 459 F.3d 377, 380 n.2 (2d Cir. 2006)).

make sure that a property owner is made *whole* by receiving interest and compensation for whatever money they had to spend in retrieving the property. *Cf.* § 2465(b)(2)(C)(iii) (obviating obligation to pay fees only where claimant has not incurred additional reasonable expenses). A rule that allowed the government to avoid fees and interest by simply refusing to file an action in court (while also refusing to return the money) would allow the government to impose on innocent property owners the very costs that CAFRA insists the government defray.

After all, the concerns motivating CAFRA's fee-shifting provisions in the first place were that "many civil *seizures* are not challenged" due to the expense of challenging them. H.R. Rep. No. 106-192 at 14 (1999) (emphasis added). Congress's concerns in alleviating these expenses were not limited to the burdens imposed on people forced to actually litigate civil forfeiture actions; instead, they were largely focused on the importance of people *actually getting their property back* when the government declined to return it. *See* H.R. Rep. No. 106-192 at 8–9 (describing, as an example of the unjust expenses foisted on property owners, a case where "the government refused to release" seized property after dropping criminal charges "for lack of evidence"). CAFRA's fee-shifting provision must therefore encompass situations like this one—where the government seized property and began the forfeiture process but refused to either return the property or initiate judicial proceedings after it became clear that its deadline had expired.

The Sixth Circuit has not yet addressed whether CAFRA's requirement that the government pay fees and interest is strictly limited to when the government initiates a judicial forfeiture proceeding or whether it applies when property owners must take action to get their

property back in the absence of such a proceeding.[5] *Compare Ohel Rachel Synagogue v. United States*, 482 F.3d 1058, 1061–64 (9th Cir. 2007) (holding that CAFRA fee and interest provisions apply only to judicial forfeitures, not when property is returned after an administrative claim is filed) *with United States v. Evans*, 561 F. Appx 877, 880 (11th Cir. 2014) (noting that this remains an open question in the Eleventh Circuit and declining to resolve it). But even the Ninth Circuit's holding in *Ohel Rachel Synagogue* does not reach so far as to require denial of fees here: In that case (like this case), the government had initiated an administrative forfeiture. But in that case (unlike this case) the government returned the property in question after the owners filed an administrative claim. Here, the government not only initiated an administrative forfeiture, but (by its failure to comply with CAFRA's procedural requirements) forced the Kazazis to litigate—and prevail—in federal court. While the appellate courts may be unsettled about whether CAFRA allows for fees in the purely administrative context, the Kazazis can find no appellate authority rejecting a fee application where the administrative forfeiture was only terminated by actual federal-court litigation.

And the absence of directly on-point appellate caselaw is telling here: It seems rare for government officials to seize property and then, without initiating judicial proceedings, hold onto it until a judge must order its return. But the government has done so here, and CAFRA dictates that it therefore must make the Kazazis whole. A contrary rule would incentivize—indeed, reward—bad behavior by government actors: If the government had initiated its own federal lawsuit after its deadline expired in this case, it would have lost in short order and been liable for the Kazazis' fees. Allowing the government to escape those fees by forcing the Kazazis to

---

[5] The Sixth Circuit has not had occasion to determine whether CAFRA's requirement that the government pay interest on seized money applies in these circumstances because it has held that claimants whose property is held for forfeiture are entitled to interest since before CAFRA was passed. *See United States v. $515,060.42*, 152 F.3d 491 (6th Cir. 1998).

initiate the lawsuit themselves would allow the government to reduce its own liability by

increasing the costs to the Kazazis of recovering their own money. CAFRA demands no such

result here, and neither should the Court. The Kazazis' motion for attorney fees should therefore

be granted.

## II.     The Fees Sought Are Reasonable.

In their efforts to secure the return of their wrongfully taken property, the Kazazis have

benefitted from hundreds of attorney hours dedicated to ascertaining the veracity of their claims

and drafting and filing the necessary documents in this Court. But they do not seek recovery for

all of that time. Instead, the Kazazis' attorneys have preemptively declined to seek recovery for

(1) any time expended after this Court's order that the Respondents return the Kazazis' money

with interest and (2) hundreds of additional hours expended by the Institute for Justice's

attorneys and paralegals. *See* Decl. of Wesley Hottot ¶¶ 7–8. The result of this aggressive

exercise of billing judgment is a reasonable—indeed, minimal—request for fees and costs. The

Kazazis seek only That fee request is based only on hours reasonably expended in light of the

complexity of the case and the Kazazis' successful result in the case—hours that total 94.5 hours

expended by lead attorney Wesley Hottot, 11.25 hours expended by local counsel Patrick Lewis

and 2.25 hours expended by Mr. Lewis's litigation support professional . *See* Hottot Decl. ¶ 8;

Declaration of Patrick Lewis ¶ 7. The total fees and costs incurred by Mr. Lewis's firm of

BakerHostetler in this matter are $6,897.63. *See* Declaration of Patrick Lewis ¶ 6 & attachment.

Because Mr. Hottot does not bill private clients for his time see Hottot Decl. ¶ 7, the Kazazis

have provided testimony from Cleveland litigator Michael Ungar opining that a reasonable

hourly for an attorney of Mr. Hottot's experience in the Cleveland market would be $385 to $450

per hour. Declaration of Michael Ungar ¶ 6. Taking the very lowest end of Mr. Ungar's estimate

of Mr. Hottot's reasonable rate ($385 per hour), a reasonable fee recovery in this action yields a

total of $43,280.13—the sum total of $36,382.50 for Mr. Hottot's time and the $6,897.63 in fees

and costs incurred by Mr. Lewis's firm.

## CONCLUSION

For the foregoing reasons, the Court should award the Kazazis attorney fees and costs in

the amount of $43,280.13.

| | |
|---|---|
| /s/ Patrick T. Lewis | /s/ Robert McNamara |
| Patrick T. Lewis (0078314) | Robert J. McNamara (VA bar no. 73208)* |
| BakerHostetler LLP | Institute for Justice |
| 127 Public Square, Ste 2000 | 901 N Glebe Road, Ste 900 |
| Cleveland, OH 44114-1214 | Arlington, VA 22203-1853 |
| P: (216) 621-0200 | P: (703) 682-9320 |
| F: (216) 696-0740 | F: (703) 682-9321 |
| Email: plewis@bakerlaw.com | Email: rmcnamara@ij.org |

Wesley Hottot (TX bar no. 24036851)*
Institute for Justice
600 University Street, Ste 1730
Seattle, WA 98101-3150
P: (206) 957-1300
F: (206) 957-1301
Email: whottot@ij.org

*Counsel for Movants*

*\* Admitted pro hac vice*

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)

Pursuant to Local Rule 7.1(f), undersigned counsel certifies that the foregoing brief is 13 pages in length and within the page limitations for nondispositive motions.


<u>/s/ Robert McNamara</u>

Robert McNamara
Attorney for Movants


CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of December, 2018, a copy of the foregoing brief was filed electronically and that notice of this filing was therefore sent to all parties by operation of the Court's electronic filing system.


<u>/s/ Robert McNamara</u>

Robert McNamara
Attorney for Movants