**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

RUSTEM KAZAZI; LEJLA KAZAZI; and
ERALD KAZAZI,

        *Movants*,

v.

U.S. CUSTOMS AND BORDER
PROTECTION; UNITED STATES OF
AMERICA; KEVIN McALEENAN,
Commissioner, U.S. Customs and Border
Protection, sued in his official capacity;
TIMOTHY STARK, agent of U.S. Customs
and Border Protection, sued in his individual
capacity; and UNKNOWN AGENTS OF U.S.
CUSTOMS AND BORDER PROTECTION,
sued in their individual capacities,

        *Respondents*.

No. 1:18-MC-00051-DAP

JUDGE DAN AARON POLSTER

**REPLY IN SUPPORT OF KAZAZIS'**
**MOTION FOR ATTORNEYS' FEES**

       Congress has provided that "the United States shall be liable for reasonable attorney fees" in "any civil proceeding to forfeit property" in which the property owner "substantially prevails." 28 U.S.C. § 2465(b)(1).  The Sixth Circuit has recognized this policy for what it is—a measure of recompense for people like the Kazazis, who defeat an effort to forfeit their property:  "[T]he stated purpose of CAFRA is to make federal civil forfeiture procedures fair to property owners and to give owners innocent of any wrongdoing the means to recover their property and make themselves whole after wrongful government seizures."  *United States v. Coffman*, 625 Fed. Appx. 285, 289 (6th Cir. 2015) (alteration in original) (reversing denial of CAFRA fees where property owner successfully invoked a criminal procedural rule to obtain return of her property).

1

In its Brief in Opposition, the government turns this fee-shifting provision on its head. First, the government claims that CAFRA does not apply because, rather than "initiate a civil forfeiture action," ECF 20 at 2, in this case, the government unlawfully held onto the Kazazis' money for months after CAFRA's limitations period had expired—forcing the family to obtain lawyers and make a motion for return of property under CAFRA, *see* ECF 1.  In other words, the government believes that it can evade fee-shifting under CAFRA simply by ignoring CAFRA's command that it initiate civil forfeiture proceedings, initiate criminal proceedings, or return seized property within 90 days of the property owner's demand for proceedings in federal court. *See* 18 U.S.C. § 983(a)(3)(B).  This Court should reject that tortured reading of the statute in favor of its text, purposes, and the case law discussed below.

Assuming this was a "civil forfeiture action" (and it was), the government next suggests that the Kazazis did not "substantially prevail" when they secured both a court order to return $57,330 of the family's money (plus interest) and the government's subsequent agreement to return another $385.  *See* ECF 8 & 15.  But when the government seizes $58,100 from a family, they "substantially prevail" by successfully litigating for the return of $57,715 (plus interest)— that is, more than 99% of what was actually seized from them and 100% of what the government sought to forfeit.  This Court should reject the government's absurd notion that prevailing "substantially" requires something *more* than "prevailing."  Indeed, "prevailing" on all of one's claims is the most a person can accomplish in litigation, so "substantially prevail[ing]" must mean obtaining something *less* than everything that a person sets out to obtain.  Whatever the term "substantially" may mean on the margins, here, the Kazazis' legal position was fully vindicated and all but $385 of their property was returned.  That is prevailing more than "substantially"; that is what anyone would call victory.

2

Finally, the government does not dispute that the Kazazis' requested award is reasonable. For that reason, the Court should award all $43,280.13 requested by the family.

## I.      This was "a civil action to forfeit property."

Fee-shifting is mandatory in "any civil proceeding to forfeit property under any provision of Federal law."  28 U.S.C. § 2465(b)(1).  This was such a proceeding.

It began when U.S. Customs and Border Protection sent a "Notice of Seizure and Information to Claimants—CAFRA Form," in which the agency alleged that the family's money was "subject to forfeiture under the provisions of Title 18, United States Code, Section 981 and 18 United States Code, Section 1960."  ECF 1-6.  The notice laid out the provisions of CAFRA that gave the Kazazis the right to demand proceedings in federal court (rather than administrative proceedings before the agency).  *Id.*  The Kazazis responded by submitting the required "CAFRA Seized Asset Claim Form" and "Election of Proceedings—CAFRA Form" in which they invoked their right to federal-court adjudication.  *See* ECF 1-9, 1-10, 1-11.  Over the course of several months, CBP representatives pressured the Kazazis to withdraw their demand for court action and to allow the agency to proceed administratively.  ECF 1-19 to 1-21; *see also* ECF 1-4 ¶¶ 26–30.  The family refused.  *See* ECF 1-4 ¶ 29.  But when CAFRA's 90-day limitations period expired without the government filing a civil forfeiture complaint, *still* the agency refused to return the Kazazis' money.  *See id.*  This forced the family to initiate civil proceedings of their own by filing a motion for return of property under Criminal Rule 41(g).[1]

---

[1] A motion for return of property is "[essentially] a civil equitable proceeding, notwithstanding the fact that the motion was styled under" the Criminal Rules.  *United States v. Duncan*, 918 F.2d 647, 654 (6th Cir. 1990) (alteration in original).  Indeed, in other cases, the government has successfully argued that Criminal Rule 41(g) is the *only* means of seeking the return of property when the government violates CAFRA's statute of limitations.  *See, e.g.,* *United States v. Sims*, 376 F.3d 705, 708 (7th Cir. 2004) ("The proper office of a Rule 41(g)
     [ *cont. next page* ]

Now, the government resists the idea that the Kazazis' motion was "brought pursuant to
. . . CAFRA."  ECF 20 at 2 n.1.  But CAFRA was the procedural basis for the government's
seizure, the basis for its communications with the Kazazis, and the basis on which the Kazazis
successfully demanded return of their property.  *See* ECF 1.  Put differently, the government set
out to civilly forfeit the family's money under CAFRA; the family invoked their rights under
CAFRA; and, while the Kazazis' motion of course did not seek "to forfeit property," that is
because the government alone can sue to forfeit property, and the sole basis for the Kazazis'
motion was that the government is now barred by CAFRA from seeking to forfeit their property.
In sum, this was a "civil proceeding to forfeit property"; it was only the government's inaction
that transformed it into a civil proceeding for the return of property that, to that point, the
government sought to forfeit.

The government's cited authority is not to the contrary.  The government relies on *United
States v. $116,850 in U.S. Currency*, a case in which the court invoked CAFRA to award more
than the amount in controversy in fees and costs to a property owner after he defeated the
government's effort to forfeit seized cash.  166 F. Supp. 3d 626, 630 (D.S.C. 2015).  The
government is correct that the court in that case held that CAFRA does not authorize fee-shifting
in *administrative* forfeiture proceedings, *see id.* at 632, but that hardly matters where, as here, the
property owner litigates in federal court.  The government's other cases either stand for the same
proposition—that *administrative* forfeiture actions are not subject to fee-shifting—or deny a
CAFRA award under very different circumstances.  *See United States v. Craig*, 694 F.3d 509,

---

motion is, before any forfeiture proceedings have been initiated, or before any criminal charges
have been filed, to seek the return of property . . . held an unreasonable length of time without
the institution of proceedings that would justify the seizure and retention of the property."); *see
generally* Stefan D. Cassella, Asset Forfeiture Law in the United States § 3-8(c) (2d ed. 2013)
(collecting cases holding that "Rule 41(g) is the appropriate vehicle for seeking the return of
property never forfeited").

511–12 (3rd Cir. 2012) (declining to award interest to convicted criminal, who did not oppose dismissal of his civil case after successfully regaining his property in a parallel criminal case); *United States v. Minh Huynh*, 334 Fed. Appx. 636, 639 (5th Cir. 2009) (unpublished) (affirming denial of CAFRA fees because "the return of Plaintiffs' car did nothing to prevent the Government from seizing it again" while affirming an award under 28 U.S.C. § 2412(d)(1)(A) based on the seizure of other property).  Unlike the property owner in *Craig*, the Kazazis regained their property in civil proceedings, not criminal proceedings.  Unlike the property owner in *Minh Huynh*, the government can never seize their property again.  *See* 18 U.S.C. § 983(a)(3)(B).  The government cites no case (because there is no case) like this one, in which the government simply refused to return property that it could no longer forfeit.

While the government cites a raft of authority from outside the Sixth Circuit, the Sixth Circuit itself has already rejected a formalistic reading of CAFRA.  In *United States v. Coffman*, a third-party intervened in criminal proceedings in which the government was seeking to civilly forfeit real estate in which the third-party had an interest.  625 Fed. Appx. 285, 286–87 (6th Cir. 2015).  The intervenor won when the district court rejected forfeiture of her interest and awarded her fees under CAFRA.  On appeal, the government argued that the criminal nature of the proceedings precluded a CAFRA award—which would seem to be true in the Third Circuit under *Craig*—but the Sixth Circuit had no trouble rejecting that argument, observing that the property owner "had no choice but to pursue her desired result in the criminal action."  *Id.* at 288.  Key to the Sixth Circuit's conclusion was that the property owner was "exactly the type of person CAFRA is meant to protect . . . ."  *Id.* at 289.  As a result, the civil character of the government's underlying forfeiture effort controlled, not the precise procedural form that the case took based on the government's own actions.

Similarly, in this case, a "civil action to forfeit property" was the government's plan from day one; the Kazazis demanded that the government institute a "civil action to forfeit property"; and—having failed to do so within the limitations period—the government was forced to return the property based on the Kazazis' motion under CAFRA.  Because the Kazazis lawyered up and fought back, there now can be no "civil action to forfeit [their] property."  Like the property owner in *Coffman*, therefore, the Kazazis are "exactly the type of person CAFRA is meant to protect . . . ."  625 Fed. Appx. at 289.

## II.  The Kazazis have substantially prevailed.

When the Kazazis initiated this action, the United States was unlawfully holding at least $57,330 of their money for the stated purpose of pursuing civil forfeiture.  *See* ECF 1-6.  Today, the Kazazis have 100% of that money (and more) back, and the government is barred from pursuing forfeiture.  All of the Kazazis' claims regarding the money have been resolved *with* prejudice.  *See* ECF 15.  This is what it means to "substantially prevail."  The government's arguments to the contrary are unpersuasive.

The government is incorrect that claims for fees in civil forfeiture cases are governed by the "prevailing party" standard.  *See* ECF 20 at 5 (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001)).  The *Buckhannon* doctrine deals with the meaning of "prevailing party" when a *plaintiff* seeks fees under federal statutes that are not at issue in this case; by contrast, CAFRA requires that a party "substantially prevail[]" in a civil forfeiture case, where the property owner is the functional equivalent of a *defendant*.[2]  *See* 28 U.S.C. § 2465(b)(1).

---

[2] The same dictionary used by the Supreme Court to define "prevailing party" in *Buckhannon* defines "substantial" as "[c]ontaining the essence of a thing; conveying the right
   [ *cont. next page* ]

The Supreme Court has emphasized—in a unanimous opinion—that the meaning of "prevailing party" under a fee-shifting statute changes depending on who is making the claim for fees.  *See CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1651 (2016).  As a matter of "[c]ommon sense," the Supreme Court determined that *Buckhannon*'s "material alteration" standard cannot be rigidly applied to defendants seeking fee-shifting under a "prevailing party" statute:  "Plaintiffs and defendants come to court with different objectives"; while "[a] plaintiff seeks a material alteration in the legal relationship between the parties[,] [a] defendant seeks to prevent this alteration to the extent it is in the plaintiff's favor."  *Id.*  Here, the Kazazis are the functional equivalent of defendants because, at the outset of this case, the government had seized their money and claimed a legal entitlement to forfeit it based on criminal allegations.  As a result, even if the Kazazis were invoking a "prevailing party" statute, they would only need to show that they had altered the legal status quo by preventing the forfeiture of their money.  The family was forced to litigate to establish that fact; but they did so, and they won.

The Kazazis would also be entitled to fees if *Buckhannon* controlled because there has been a "material alteration of the legal relationship" between the family and the government. *Buckhannon*, 532 U.S. at 603–05.  The Kazazis filed this action in May 2018, at which point the government had been holding their money for over seven months (more than a month past the deadline to institute civil-forfeiture proceedings).  ECF 1.  In a telephone conference held on June 8, 2018, this Court "directed Respondents to send the Kazazis a check for the undisputed amount of $57,330 plus interest."  ECF 8.  In July 2018, the government complied and returned the Kazazis' money with interest.  It later agreed to return an additional $385 of the disputed

---

idea even if not the exact details."  *Black's Law Dictionary* 1656–57 (10th ed. 2014).  Even if the Kazazis had not prevailed in "the exact details" of this case (and they did), the "essence" of the outcome certainly conveys "the right idea" that they—and not the government—won.

7

$770. *See* ECF 15.  And, now, all the Kazazis' claims regarding the money have been resolved and dismissed with prejudice.  *Id.*  That brings this action to a close, never to be reopened.

By contrast, where courts have found that civil-forfeiture claimants are ineligible for fees under *Buckhannon*, they have done so because the government's cessation of its forfeiture action was both voluntary and without prejudice.  *See United States v. $32,820.56*, 838 F.3d 930, 936–37 (8th Cir. 2016) (collecting cases).  Here, the government's actions were neither voluntary nor without prejudice.  Just the opposite: Even if the government had at some point intended to give the Kazazis' money back, it did not do so until ordered to do so by this Court.  ECF 8.  An order from a federal judge instructing one party to give property to another party is perhaps the quintessential example of a "material alteration" for *Buckhannon* purposes.  *See, e.g.*, *Sierra Club v. Hamilton Cty. Bd. of Cty. Commr's*, 504 F.3d 634, 643 (6th Cir. 2007) ("Under *Buckhannon*, a plaintiff must obtain court-ordered or court-sanctioned relief in order to be considered a prevailing party.").

CAFRA does not allow the government to avoid fees by simply returning property after its owner files a motion based on CAFRA's statute of limitations.  In most fee-shifting cases (like those governed by 42 U.S.C. § 1988), plaintiffs object to some particular government action or policy, and it is entirely possible that government officials might decide to change their action or policy without regard to the merits of the plaintiffs' particular complaint.  But in a forfeiture case, the government has seized a particular person's property.  Where a civil-rights plaintiff might seek an injunction governing future government behavior, a forfeiture claimant seeks only the return of the specific property at issue.  *Cf. CRST Van Expedited*, 136 S. Ct. at 1651.  The return of that property gives the claimant literally everything she wanted, and it makes perfect sense to say that she has prevailed by getting it back.  The government's eventual acquiescence

to returning the property it unlawfully held cannot mean that the owner did not " substantially prevail[]" within the meaning of CAFRA.

Accordingly, the Kazazis not only "substantially prevail[ed]," they prevailed in the traditional sense.  The text and purpose of CAFRA show that they are exactly the sort of people whom Congress intended to compensate when the government seeks to forfeit their property, loses, and returns the property to its rightful owner.

**III.     The government does not dispute that the requested award is reasonable.**

The Kazazis' motion and supporting evidence demonstrate that their request for $43,820.13 is reasonable and, in fact, minimal given the actual costs of this litigation.  *See* ECF 17 at 12–13.  Their attorneys have unilaterally excluded over 400 hours of chargeable time.  ECF 17-2 ¶¶ 8–9.  They have unilaterally eliminated all time devoted to the case after the Court's June 8, 2018 telephonic conference, *id.* ¶ 8, when the Court "directed Respondents to send the Kazazis a check for the undisputed amount of $57,330 plus interest," ECF 8.  Several attorneys who worked on the case have not requested any time and the lead attorney has selected the very low end of the range of reasonable hourly rates in the Cleveland legal market.  *See* ECF 17 at 12–13.  Additionally, the Kazazis have requested no out-of-pocket costs.  ECF 17-2 ¶ 10.

The government offers no response as to the reasonability of the Kazazis' requested award, relying exclusively on its argument that *no* fees can be awarded.  As demonstrated above, CAFRA not only allows for an award in these circumstances, it *requires* one.  Because the government apparently does not dispute that an award of $43,820.13 would be reasonable, the Court should make an award in that amount.

## CONCLUSION

The Court should award attorneys' fees to the Kazazis in the amount of $43,820.13.

Respectfully submitted,

/s/ Patrick T. Lewis                              /s/ Wesley Hottot
Patrick T. Lewis (0078314)                        Wesley Hottot (WA bar no. 47539)*
BakerHostetler LLP                                Institute for Justice
127 Public Square, Ste 2000                       600 University Street, Ste 1730
Cleveland, OH 44114-1214                          Seattle, WA 98101-3150
P: (216) 621-0200                                 P: (206) 957-1300
F: (216) 696-0740                                 F: (206) 967-1301
Email: plewis@bakerlaw.com                        Email: whottot@ij.org

Robert J. McNamara (VA bar no. 73208)*
Institute for Justice
901 N Glebe Rd, Ste 900
Arlington, VA 22203-1853
P: (703) 682-9320
F: (703) 682-9321
Email: rmcnamara@ij.org

*Counsel for Movants*

* Admitted pro hac vice

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)

Pursuant to Local Rule 7.1(f), undersigned counsel certifies that the foregoing brief is

nine pages in length and therefore within the page limitations for non-dispositive motions.

/s/ Wesley Hottot

Wesley Hottot
Attorney for Movants


## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of February, 2019, a copy of the foregoing brief was

filed electronically and that notice of this filing was therefore sent to all parties by operation of

the Court's electronic filing system.

/s/ Wesley Hottot

Wesley Hottot
Attorney for Movants