**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Rustem Kazazi *et al*,** ) | |
| ) | |
| Petitioners, ) | |
| ) | **Case No. 4:18-mc-00051** |
| v. ) | |
| ) | **Judge Dan Aaron Polster** |
| **U.S. Customs and Border** ) | |
| **Protection, *et al*,** ) | **ORDER** |
| ) | |
| Respondents ) | |

Before the Court is Petitioners' Motion for Attorney Fees and Costs. **Doc. #: 17**. The Court has reviewed Petitioners' Motion, the Government's Response, Doc. #: 20, and Petitioners' Reply. Doc. #: 21. For the reasons to follow, the Court **GRANTS** Petitioners' Motion for Attorney Fees and Costs for the amount of $43,280.13.

On October 24, 2017, Homeland Security agents ("the Government") seized at least $57,330 belonging to Petitioners. On December 8, 2017, the Government sent a Notice of Seizure to Petitioners setting a deadline of January 13, 2018 for Petitioners to file a claim for their property.[1] Petitioners timely filed a claim. After some additional communication between the parties regarding the amount of the claim, by January 17, 2018, the Government had acknowledged receipt of Petitioners' claim. On May 31, 2018, after no action had been taken by the Government, Petitioners filed a miscellaneous action pursuant to Fed. R. Crim. Proc. 41(g) for the return of their money. A week later, on June 7, 2018, the Court held a teleconference during which the

---

[1] The Government originally sent a Notice of Seizure on December 1, 2017. A subsequent amended Notice was sent on December 8, 2017 to clarify the January 13, 2018 deadline.

Government reported it "had begun the process of "tendering a check" and returning the money that it had seized from Petitioners." Doc. #: 20 at 2. The following day, on June 8, 2018, the Court held an impromptu teleconference wherein the Court directed the Government to pay the undisputed amount of $57,330 and attempted to help the parties reach an agreement regarding the remaining disputed amount of $770. On July 10, 2018, the Court held a settlement conference during which the Government stated that it had "mailed checks in [the amount of $57,330] to the Kazazi family on July 3, 2018." Doc. #: 8 at 2. On November 16, 2018, the parties notified the Court that they had resolved their dispute with respect to the remaining $770.

The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") provides that in "any civil proceeding to forfeit property under any provision of Federal law in which the claimant substantially prevails, the United States shall be liable for reasonable attorney fees and other litigation costs reasonably incurred by the claimant." 28 U.S.C. § 2465(b)(1)(A). Further, CAFRA also expressly commands:

> Not later than 90 days after a claim has been filed, the Government *shall* [1] file a complaint for forfeiture in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims or [2] return the property pending the filing of a complaint, except that a court in the district in which the complaint will be filed may [3] extend the period for filing a complaint for good cause shown or upon agreement of the parties.

18 U.S.C. § 983(a)(3)(A) (emphasis added). Thus, per the statute, the Government has 90 days to initiate one of three possible options: 1) file a complaint (civil or criminal) alleging the property is subject to forfeiture, 2) return the property, or 3) seek an extension of the deadline. *Id.* Further, if by the end of the 90-day deadline, the Government has not initiated one of these options, its choice becomes limited to the prompt return of the property. See 18 U.S.C. § 983(a)(3)(B) ("if the Government does not [perform one of the actions listed above], the Government *shall* promptly release the property.") (emphasis added).

The Government acknowledged receipt of Petitioners' final amended claim on January 17, 2018. Therefore, the Government had 90 days (i.e. until April 17, 2018) to act regarding Petitioners' property. Instead, after 44 days had elapsed after the deadline, Petitioners filed a Rule 41(g) Motion for the Return of Property on May 31, 2018. Doc. #: 1.

The statute does not give a specific time by which the Government must release seized property after the 90-day deadline has elapsed. Section 983 only provides that the Government "shall promptly release the property." 18 U.S.C. § 983(a)(3)(B). The Court has not found a case specifically addressing the issue of what timeframe constitutes "promptly." The Government, commendably, has not argued that it acted promptly in this case, and the Court concludes that 44 days exceeds a reasonable definition of "prompt." Petitioners' only recourse was to file a motion for return of property. Even then, while the Government said in the June 7th teleconference that it had begun the process of returning the money, it was not until July 3rd that the check was mailed to Petitioner.

The Government argues, despite its failure to act promptly, that because Petitioners filed this action instead of the Government, it is an "equitable action for the return of property" and not a "civil proceeding to forfeit property" as required by CAFRA. Therefore, argues the Government, CAFRA's fee-shifting provision does not apply to the present case. Doc. #: 20 at 3 (citing *United States v. Craig*, 2011 WL 839538 (M.D. Pa. 2011); 28 U.S.C. § 2465(b)(1)(A)). This argument overlooks the fact that if the Government intended to keep the money, it was obligated to bring a civil proceeding to forfeit property within 90 days, which it did not do.

The Government's reading of the statute would produce the absurd result that the intentional violation by the government of one section of CAFRA effectively immunizes it from the remedial provisions of another section. The Government's interpretation would result in an

innocent owner having to allow the Government to unlawfully keep her property indefinitely or retain counsel and pay out of her own pocket to recover it and potentially spend more in attorney fees than the value of the property.[2] Either unfair result is antithetical to CAFRA, the stated purpose of which is to "make federal civil forfeiture procedures fair to property owners and to give owners innocent of any wrongdoing the means to recover their property and make themselves whole after wrongful government seizures." H.R. REP. 106-192, 11; *see also United States v. Coffman*, 625 F. App'x 285, 289 (6th Cir. 2015). In this case, Petitioners are exactly the type of people CAFRA was designed to protect and make whole—innocent property owners merely seeking the return of their held property. *See, cf. Coffman*, 625 F. App'x at 289 (finding CAFRA's fee-shifting provision applies to an innocent third-party intervenor found to be a bona fide purchaser of property forfeited in a criminal proceeding against another).

Petitioners substantially prevailed in this case. Before filing their motion, Petitioners did not have their property. On June 8, 2018, the Court directed the Government to "send the Kazazi's a check for the undisputed amount of $57,330 plus interest," which it did on July 3, 2018. Doc. #: 8 at 2. Presently, Petitioners' case has been dismissed with prejudice by the Court, *see* Doc. #: 15, and the Government "may not take any further action to effect the civil forfeiture of such property." 18 U.S.C. § 983.

---

[2] This was almost the case here. But for the quick intervention by the Court directing the Government to return the uncontested portion of Petitioners' money, Petitioners' attorney's fees could have been much higher. *See, e.g., United States v. $116,850 in U.S. Currency*, 166 F. Supp. 3d 626, 637-38 (D.S.C. 2015) (awarding $160,806.53 in fees, costs, and interest).

Finally, the Court finds, and the Government does not contest, that Petitioners' requested fees and costs are reasonable.³ Accordingly, Petitioners' Motion for Attorney Fees and Costs, Doc. #: 17, is **GRANTED**, and awards $43,280.13 in attorney fees and costs.

    **IT IS SO ORDERED.**

        **/s/ Dan Aaron Polster** *March 1, 2019*
        **DAN AARON POLSTER**
        **UNITED STATES DISTRICT JUDGE**

---

[3] Petitioners' attorneys state that they have "preemptively declined to seek recovery for (1) any time expended after this Court's order that the Respondents return the Kazazis' money with interest and (2) hundreds of additional hours expended by the Institute for Justice's attorneys and paralegals." Doc. #: 17 at 12. Additionally, Petitioners' attorney, Mr. Hottot, elected to take the lowest rate from an estimated range of reasonable hourly rates for a Cleveland attorney with experience similar to Mr. Hottot's. *See id.*